PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DAWN D. BROWN, in her capacity
as Administratrix of the Estate of
William David Bowden,

               *Plaintiff-Appellee,*

       v.

TOWN OF CARY,

               *Defendant-Appellant.*

---

THE NORTH CAROLINA LEAGUE OF
MUNICIPALITIES; VIRGINIA
MUNICIPAL LEAGUE; MUNICIPAL
ASSOCIATION OF SOUTH CAROLINA;
VIRGINIA ASSOCIATION OF COUNTIES;
INTERNATIONAL MUNICIPAL LAWYERS
ASSOCIATION; SCENIC AMERICA, INC.,

    *Amici Supporting Appellant,*

THE NORTH CAROLINA
INSTITUTE FOR CONSTITUTIONAL
LAW,

    *Amicus Supporting Appellee.*

No. 11-1480

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Louise W. Flanagan, Chief District Judge.
(5:09-cv-00504-FL)

Argued: September 19, 2012

Decided: January 22, 2013

Before NIEMEYER and DIAZ, Circuit Judges, and Max O. COGBURN, Jr., United States District Judge for the Western District of North Carolina, sitting by designation.

---

Reversed and remanded by published opinion. Judge Diaz wrote the opinion, in which Judge Niemeyer and Judge Cogburn joined.

---

### COUNSEL

**ARGUED:** Elizabeth A. Martineau, MARTINEAU KING PLLC, Charlotte, North Carolina; William D. Brinton, ROGERS TOWERS, PA, Jacksonville, Florida, for Appellant. Mark Russell Sigmon, GRAEBE HANNA & SULLIVAN, PLLC, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Lisa C. Glover, TOWN OF CARY, Cary, North Carolina, for Appellant. Katherine L. Parker, AMERICAN CIVIL LIBERTIES UNION OF NORTH CAROLINA LEGAL FOUNDATION, Raleigh, North Carolina, for Appellee. Patrick H. Flanagan, CRANFILL, SUMNER & HARTZOG, Charlotte, North Carolina; Randal R. Morrison, SABINE & MORRISON, San Diego, California; John M. Baker, GREENE ESPEL PLLP, Minneapolis, Minnesota; Dana K. Maine, FREEMAN MATHIS & GARY, LLP, Atlanta, Georgia, for Amici Supporting Appellant. Jeanette K. Doran, Executive Director and General Counsel, NORTH CAROLINA INSTITUTE FOR CONSTITUTIONAL LAW, Raleigh, North Carolina, for Amicus Supporting Appellee.

---

## OPINION

DIAZ, Circuit Judge:

The Town of Cary, North Carolina (the "Town"), appeals the district court's invalidation of its municipal sign ordinance as it applied to resident William David Bowden ("Bowden"). The district court held that the ordinance was a content based constraint on Bowden's First Amendment rights. We disagree. Because the ordinance regulates speech for reasons independent of content, it is a content neutral restriction subject to intermediate scrutiny. Applying that scrutiny, we conclude the ordinance does not violate the First Amendment and reverse.

I.

A.

Pursuant to the authority granted by the North Carolina legislature to state municipalities, the Town has implemented a comprehensive Land Development Ordinance ("LDO") to regulate land use within its jurisdiction. The current LDO, adopted in 2003, consists of twelve chapters of regulations, with chapter 9 (the "Sign Ordinance") governing the placement and display of residential signs.

Characteristic of most sign regulations, the legislative intent of the Sign Ordinance is to promote aesthetics and traffic safety. Chapter 9.1.1(A) outlines the "purposes" of the Sign Ordinance:

> (1) To encourage the effective use of signs as a means of communication in the Town;
>
> (2) To maintain and enhance the pleasing look of the Town, which attracts to the Town major events of regional, national, and international interest;

(3) To preserve Cary as a community that is attractive to business;

(4) To improve pedestrian and traffic safety;

(5) To minimize the possible adverse effects of signs on nearby public and private property; and

(6) To implement relevant provisions of the comprehensive plan, as updated from year-to-year.

J.A. 339.

The Sign Ordinance also notes that "[a]ttractive and integrated urban design features tend to improve a town's image, raise overall property values, attract new business and residents, and improve the quality of life." *Id.* Town officials confirm these objectives, *see* J.A. 1301 ("The Town's concern for aesthetics, appearance, [and] visual appeal is a part of the Land Use Plan's focus."), and they pervade the LDO preamble, *see* J.A. 632 ("The regulations are specifically intended to: Preserve the character and quality of residential neighborhoods," "[l]essen congestion in the streets," and "[m]aintain and protect high quality aesthetic standards for development.").

Recognizing that residential signs serve an important purpose of providing residents with a forum in which to express their "opinion on matters of public interest," in January 2005 the Town modified the Sign Ordinance to permit residents to display up to two residential signs that "shall not exceed five square feet per side in area and 42 inches in height." J.A. 1023, 357.

The LDO defines a "sign" broadly as "[a]ny device, fixture, placard or structure, that uses any color, form, graphic, illumination, symbol, or writing to advertise, attract attention, announce the purpose of, or identify the purpose of, a person

or entity, or to communicate information of any kind to the public." J.A. 1091. But the LDO also states expressly that "holiday decorations" and "public art" are not signs subject to the regulation. J.A. 1091.[1]

The LDO defines "holiday decorations" as "[d]isplays erected on a seasonal basis in observance of religious, national, or state holidays which are not intended to be permanent in nature and which contain no advertising material," J.A. 869, and "public art" as "[i]tems expressing creative skill or imagination in a visual form, such as painting or sculpture which are intended to beautify or provide aesthetic influences to public areas or areas which are visible from the public realm," J.A. 883.

B.

William Bowden lived in Cary for many years, and had long quarreled with the Town over damage to his house allegedly caused by water discharge from municipal road-paving projects. Dissatisfied with the Town's efforts to resolve the dispute, Bowden responded by painting the words "Screwed by the Town of Cary" across a fifteen foot swath of the facade of his home. Bowden chose a bright fluorescent orange paint to express his unhappiness, using lettering that varied in height from 14 to 21 inches.[2]

It was not long before a passing motorist alerted the police to Bowden's handiwork. Following a short investigation, the Town issued a "Notice of Zoning Violation" referencing the chapter 9.3.2(S) size limitations for residential signs. After Bowden refused to remove the lettering, the Town issued a second notice citing two different LDO violations. First, as the display qualified as a "wall sign" rather than a residential

---

[1]The LDO exempts six other categories of signs from regulation, none of which are at issue in this appeal.

[2]The Appendix to this opinion contains an image of Bowden's display.

sign, the Town alleged that it violated the size limitations of chapter 9.3.2(X)(2)(a), which requires that all such signs "not exceed two square feet in area."[3] J.A. 366. Second, the Town alleged that the sign violated the color restrictions of chapter 9.8.3(B), which prohibits the "use of high intensity colors or fluorescent pigments."

The second notice demanded Bowden remove the sign or suffer daily fines. The Town emphasized that it was not the content of Bowden's sign, but rather its size and color, that was the problem. Accordingly, the Town recommended Bowden display his message through a medium that complied with the Sign Ordinance.[4] Bowden refused. Instead, he sued under 42 U.S.C. § 1983, asserting facial and as applied challenges to the constitutionality of the Sign Ordinance. Bowden principally argued that because the Sign Ordinance exempted certain signs from regulation while regulating his particular sign, it was a content based infringement on his First Amendment rights. Both parties moved for summary judgment.

The district court ruled for Bowden. Relying principally on the Supreme Court's decision in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981) (plurality opinion), the district court first noted that the Sign Ordinance "specifies several types of signs[, including public art and holiday decorations,] which are exempt from the restrictions that apply to all other types of signs." *Bowden v. Town of Cary*, 754 F. Supp. 2d 794, 802 (E.D.N.C. 2010). These exclusions, said the court, require the Town to engage in "a searching inquiry into the content of a particular sign . . . to determine whether it is subject to or exempt from regulation." *Id.* at 803. So, for example, because the Sign Ordinance requires examining the content of a sign such as "Scrooged by the Town of

---

[3]The Sign Ordinance allows each homeowner to post one such wall sign on their property. Bowden does not challenge this particular restriction.

[4]The record includes an example of a permissible, alternative way of displaying Bowden's message. *See* J.A. 1924; Appellant's Br. at 16.

Cary" to discern whether it is a holiday decoration and thus excluded from regulation, the district court concluded that the Sign Ordinance was a content based regulation. Applying strict scrutiny, the court invalidated the Sign Ordinance, granted Bowden a permanent injunction, and awarded him nominal damages of one dollar. In a subsequent order, the district court also awarded Bowden $36,197.27 in attorney fees and costs.

This appeal followed.

## II.

Before passing on the constitutionality of the Sign Ordinance, we address two issues regarding our jurisdiction to hear the appeal.

First, Mr. Bowden died during the pendency of this appeal, and in August 2011 we entered an order substituting the Administratrix of his estate, Dawn D. Brown ("Brown"), as Plaintiff-Appellee.[5] We then directed supplemental briefing on the issue of whether Bowden's § 1983 claim survived his death.[6]

Historically, the common law rule for survivability was that a cause of action died with the person. *See Zatuchni v. Sec'y of Health & Human Servs.*, 516 F.3d 1312, 1324 (Fed. Cir. 2008) (Dyk, J., concurring) (citing Restatement (Second) of Torts § 900(a) & cmt. a. (1979)). To displace the common law rule, some jurisdictions have provided by statute that certain legal claims survive the death of a party. *See Moor v. Alameda County*, 411 U.S. 693, 702 n.14 (1973).

---

[5]We use "Bowden" throughout the opinion to refer to Appellee.

[6]Both parties contend that the claim survives, but "we are, of course, duty-bound to examine our jurisdiction, notwithstanding that the parties concede or stipulate it." *Harrison v. Edison Bros. Apparel Stores, Inc.*, 924 F.2d 530, 531 n.2 (4th Cir. 1991).

As 42 U.S.C. § 1983 does not provide for survival of claims, we consult the law of the forum state—the North Carolina survival statute—to determine whether the claim survives. *See* 42 U.S.C. § 1988(a); *Robertson v. Wegmann*, 436 U.S. 584, 588-90 (1978). That statute prescribes a default rule of survival for all claims, with three exceptions, including for "causes of action where the relief sought could not be enjoyed, or granting it would be nugatory after death." N.C. Gen. Stat. § 28A-18-1(b)(3).

Analogizing Bowden's federal civil rights claim to a corresponding action under North Carolina law, we are satisfied that the claim would survive under that statute. While it is axiomatic that prospective injunctive relief "could not be enjoyed" by a deceased litigant, Bowden also asserted a past deprivation of his constitutional rights. Considering that the default rule of the North Carolina statute is one of survival, as well as the fact that courts have applied this particular exception only to prospective remedies, *see In re Higgins*, 587 S.E.2d 77, 78-79 (N.C. Ct. App. 2003); *Elmore v. Elmore*, 313 S.E.2d 904 (N.C. Ct. App. 1984), we conclude that the controversy over this retrospective constitutional injury—even if only compensable by nominal damages—would survive under North Carolina law, and therefore does not abate for our purposes. *See McGowen v. Rental Tool Co.*, 428 S.E.2d 275, 276 (N.C. Ct. App. 1993) (allowing a suit for retrospective personal injury to survive under North Carolina survival statute); *see also Covenant Media of S.C. LLC v. City of N. Charleston*, 493 F.3d 421, 424-25 (4th Cir. 2007) (holding that a suit challenging a local sign ordinance was not rendered moot by the defendant's amendment of the sign ordinance because even if claim for injunctive relief had become moot, plaintiff was still entitled to at least nominal damages for the alleged constitutional violation).

Next, the Town contends that Bowden lacks standing to challenge the exemptions of the Sign Ordinance but instead may challenge only the provisions regulating the size and pig-

ment of residential signs, since only those restrictions caused him actual injury. The district court rejected this argument, a ruling that we consider de novo. *See Piney Run Pres. Ass'n v. County Comm'rs*, 268 F.3d 255, 262 (4th Cir. 2001).

As the district court correctly noted, Bowden's complaint alleges an infringement of his First Amendment rights stemming from the LDO's allegedly content based exemptions. Inasmuch as the relevant content distinction derives from the Town's conscious choice to exempt certain signs from regulation, Bowden's legal injury derives from the exemptions no less than from the substantive restrictions themselves, and he may therefore subject those exemptions to constitutional scrutiny. *See Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 227 (1987) (explaining that standing to challenge exemptions exists where "others similarly situated were exempt from the operation of a state law adversely affecting the claimant."); *City of Ladue v. Gilleo*, 512 U.S. 43, 50-51 (1994). That is, after all, the essence of the content neutrality inquiry—analyzing what speech the Town has chosen to regulate and what speech it has chosen to exempt. Accordingly, we reject the Town's standing challenge and proceed to the merits of the district court's ruling.

### III.

In assessing the Sign Ordinance's constitutionality under the First Amendment, we review the district court's summary judgment order de novo. *Webster v. U.S. Dep't of Agric.*, 685 F.3d 411, 421 (4th Cir. 2012). Our first task is to determine whether the Sign Ordinance "is content based or content neutral, and then, based on the answer to that question, to apply the proper level of scrutiny." *Ladue*, 512 U.S. at 59 (O'Connor, J., concurring).

Not surprisingly, the parties present opposing views of how we should assess content neutrality. Bowden argues that a regulation that depends on content distinctions is necessarily

content based, while the Town argues that its regulation may distinguish speech based on its content so long as its reasons for doing so are not based on the message conveyed. We think the Town has the better argument.

For reasons we explain below, we reject any absolutist reading of content neutrality, and instead orient our inquiry toward why—not whether—the Town has distinguished content in its regulation. Viewed in that light, we are satisfied that the Sign Ordinance is content neutral. Applying the intermediate scrutiny required for content neutral restrictions on speech, we hold that the Sign Ordinance does not violate the First Amendment.

## A.

"While signs are a form of expression protected by the Free Speech Clause, they pose distinctive problems that are subject to municipalities' police powers." *Ladue*, 512 U.S. at 48. Accordingly, "[i]t is common ground that governments may regulate the physical characteristics of signs—just as they can, within reasonable bounds and absent censorial purpose, regulate audible expression in its capacity as noise." *Id.* What governments may generally not do, however, is "suppress, disadvantage, or impose differential burdens upon speech because of its content." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994). "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

We consider the Town's appeal in light of our recent decision in *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359 (4th Cir. 2012), a case the district court did not have before it. There, we assessed the constitutional bona fides of a sign ordinance that regulated the size of business signs while

exempting noncommercial signs, as well as several additional types of government signs, from a mandatory permit process. *Id.* at 362, 368.

In deciding whether these exemptions distinguished based on content, we read the Supreme Court's treatment of content neutrality in *Hill v. Colorado*, 530 U.S. 703 (2000), as "[e]schewing a formalistic approach to evaluating content neutrality that looks only to the terms of a regulation . . . [and] instead embrac[ing] a more practical inquiry." *Wag More Dogs*, 680 F.3d at 366. Our pragmatic view of First Amendment principles in *Wag More Dogs* cannot be squared with the formalistic approach relied on by the district court and urged by Bowden on appeal.

As the chief purpose of content neutrality is to prevent a government from supervising the "marketplace of ideas . . . [by] choos[ing] which issues are worth discussing or debating," *Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 537-38 (1980) (internal quotations omitted), the notion that any content distinction is intrinsically content based misapprehends the proper analysis. Content neutrality bars only one particular sort of distinction—those made with a censorial intent "to value some forms of speech over others . . . to distort public debate," *Ladue*, 512 U.S. at 60 (O'Connor, J., concurring), "to restrict expression because of its message, its ideas, its subject matter," *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972), or to "prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable," *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

We acknowledge that several of our sister circuits hew to an absolutist reading of content neutrality. *See Neighborhood Enterprises, Inc. v. City of St. Louis*, 644 F.3d 728, 736 (8th Cir. 2011), *cert. denied*, 132 S. Ct. 1543 (2012) (holding sign ordinance exemptions content based since "one must look at the *content* of the object."); *Serv. Emp. Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010) ("A reg-

ulatory scheme that requires the government to examine the content of the message that is conveyed is content-based regardless of its motivating purpose." (internal quotations omitted)); *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1263-66 (11th Cir. 2005) (applying the absolutist approach).

In our view, however, such an approach imputes a censorial purpose to every content distinction, and thereby applies the highest judicial scrutiny to laws that do not always imperil the preeminent First Amendment values that such scrutiny serves to safeguard. As we did in *Wag More Dogs*, we again join those circuits that have interpreted *Hill* as supporting a more practical test for assessing content neutrality. *See ACLU of Ill. v. Alvarez*, 679 F.3d 583, 603 (7th Cir. 2012) ("A law is not considered 'content based' simply because a court must 'look at the content of an oral or written statement in order to determine whether a rule of law applies.'" (quoting *Hill*, 530 U.S. at 721)); *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 389 (3d Cir. 2010) ("[A] consideration of the sign's content . . . does not by itself constitute a lack of neutrality as to specific content."); *H.D.V.-Greektown, LLC v. City of Detroit*, 568 F.3d 609, 622 (6th Cir. 2009) ("There is simply nothing in the record to indicate that the distinctions between the various types of signs reflect a meaningful preference for one type of speech over another."); *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1079 (9th Cir. 2006) ("[The regulation] does not require Lake Oswego officials to evaluate the substantive message . . . [and] certainly does not favor speech based on the idea expressed." (internal quotations omitted)).

We also reject the analogous principle that the Sign Ordinance is necessarily content based because "a searching inquiry into the content of a particular sign is required." *Bowden*, 754 F. Supp. 2d at 803. Rather, a more searching inquiry should merely be seen as indicative, not determinative, of whether a government has regulated for reasons related to content. *See Reed v. Town of Gilbert, Ariz.*, 587 F.3d 966, 978

(9th Cir. 2009) ("If applied without common sense, this principle would mean that every sign, except a blank sign, would be content based.").

B.

Affirming the practical inquiry propounded in *Wag More Dogs*, we reiterate its operative test for content neutrality:

> A regulation is not a content-based regulation of speech if (1) the regulation is not a regulation of speech, but rather a regulation of the places where some speech may occur; (2) the regulation was not adopted because of disagreement with the message the speech conveys; or (3) the government's interests in the regulation are unrelated to the content of the affected speech.

*Id.* at 366 (quoting *Covenant Media*, 493 F.3d at 433). Distilling this three-part test into one succinct formulation of content neutrality, if a regulation is "justified without reference to the content of regulated speech," *Hill* 530 U.S. at 720 (quoting *Ward*, 491 U.S. at 791), "we have not hesitated to deem [that] regulation content neutral even if it facially differentiates between types of speech." *Wag More Dogs*, 680 F.3d at 366.

Our two most recent sign ordinance cases illustrate this purposive approach. In *Covenant Media*, the City of North Charleston, South Carolina enacted a sign ordinance that distinguished between "off-premises" and "on-premises" commercial signs "identifying or advertising a business, person, or activity, or goods, products, services or facilities." 493 F.3d at 424-25. We applied intermediate scrutiny to this distinction because it served a content neutral purpose "to eliminate confusing, distracting and unsafe signs, assure the efficient transfer of information; and enhance the visual environment of the City of North Charleston." *Id.* at 434 (internal quotation

marks omitted). And in *Wag More Dogs*, we similarly concluded that an exemption for noncommercial signs could be justified for reasons independent of content since it served to "among other aims, promote traffic safety and the County's aesthetics, interests unrelated to messages displayed." 680 F.3d at 368. Applying intermediate scrutiny, we affirmed the district court's ruling that the sign ordinance satisfied the First Amendment. *Id.* at 370.

*Metromedia*, the principal case cited by Bowden and the district court, does not compel a different approach. That case invalidated a San Diego ordinance that permitted onsite commercial advertising while forbidding non-commercial advertising with exceptions for signs such as "religious symbols," "signs carrying news items or telling the time or temperature," and "temporary political campaign signs." *Metromedia*, 453 U.S. at 494-95, 514.

The fatal defect of the *Metromedia* ordinance was that San Diego could not "explain how or why noncommercial billboards located in places where commercial billboards are permitted would be more threatening to safe driving or would detract more from the beauty of the city," 453 U.S. at 513, and that "[n]o other noncommercial or ideological signs meeting the structural definition [were] permitted, regardless of their effect on traffic safety or esthetics," *id.* at 514.

Accordingly, it was the relationship—or lack thereof—between the content distinction and the legislative end of traffic safety that convinced the *Metromedia* Court that the city had discriminated for reasons of content. Implicit in the city's failure to establish a content neutral justification for its content distinction was a belief "that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages." *Id.* at 513.

The Town, therefore, cannot disguise a content based restriction beneath a content neutral justification, but rather must demonstrate a "'reasonable fit' between its legitimate interests in [traffic] safety and esthetics" and its exemptions for public art and holiday decorations. *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 416 (1993)[7]; *see also Turner Broad.*, 512 U.S. at 642-43 ("Nor will the mere assertion of a content-neutral purpose be enough to save a law which, on its face, discriminates based on content."); *Whitton v. City of Gladstone, Mo.*, 54 F.3d 1400, 1406 (8th Cir. 1995) ("[W]hen a government supplies a content-neutral justification for the regulation, that justification is not given controlling weight without further inquiry.").

## C.

Separating the issue of whether the Sign Ordinance has distinguished content from whether it has distinguished *because* of content, we ask in this case whether those distinctions bear a reasonable relationship to the Town's asserted content neutral purposes.

Applying that test, it is clear that while the Sign Ordinance distinguishes content, the distinctions themselves are justified for reasons independent of content. Unlike *Cincinnati*, where the city's content distinction "ha[d] absolutely no bearing on the [aesthetic] interests it ha[d] asserted," 507 U.S. at 428, the Sign Ordinance's exemptions reasonably advance the legislative interests of traffic safety and aesthetics. And as with the

---

[7]In *Cincinnati*, the Supreme Court concluded that an ordinance that banned only commercial handbills from street newsracks for the purposes of "safety and esthetics" was a content based distinction "bear[ing] no relationship *whatsoever* to the particular interests that the city has asserted." 507 U.S. at 424. Because "all newsracks, regardless of whether they contain commercial or noncommercial publications, are equally at fault," *id.* at 426, the city could not justify its decision to restrict certain publications while exempting others without reference to "the content of the publication resting inside that newsrack," *id.* at 429.

exemptions at issue in *Wag More Dogs*, we think it reasonable to presume that public art and holiday decorations enhance rather than harm aesthetic appeal, and that seasonal holiday displays have a temporary, and therefore less significant, impact on traffic safety.

We recognize, as Bowden urges, that a nativity scene or an elaborate work of art may implicate traffic safety no less than an ordinary residential sign. Similarly, a sign erected for a "Town-recognized event" or on behalf of a government agency may impair rather than promote aesthetic appeal. But the content neutrality inquiry is whether the Sign Ordinance's exemptions have a reasonable, not optimal, relationship to these asserted interests. *See Cincinnati*, 507 U.S. at 424-26. And "[w]e cannot determine with any degree of exactitude the precise restriction necessary to carry out [the Sign Ordinance's] legitimate objectives. In practice, the legislature is better equipped to make such empirical judgments." *Randall v. Sorrell*, 548 U.S. 230, 248 (2006) (plurality opinion).

Moreover, we agree with the Town that in conducting the relevant content based analysis, a court should not mechanically "scour the ordinance in question to see if it omits some categories of signs." Appellant's Br. at 25. Rather, we focus our attention on whether the restriction was adopted because of a disagreement with the message conveyed. *Hill*, 530 U.S. at 719. Applying that focus here, we conclude that the Sign Ordinance places reasonable time, place, and manner restrictions only on the physical characteristics of messages—including those voicing political protest—and exempts certain categories of signs from those restrictions solely on the basis of the Town's asserted and legitimate interests of traffic safety and aesthetics.

Accordingly, we hold that the Sign Ordinance is content neutral and examine its constitutionality under intermediate scrutiny.

## D.

The Sign Ordinance is constitutional if it "furthers a substantial government interest, is narrowly tailored to further that interest, and leaves open ample alternative channels of communication." *Wag More Dogs*, 680 F.3d at 369 (quoting *Am. Legion Post 7 of Durham, N.C. v. City of Durham*, 239 F.3d 601, 609 (4th Cir. 2001)).

It is beyond dispute that the Town's stated interests in promoting aesthetics and traffic safety are substantial. *See Arlington County Repub. Comm. v. Arlington County Va.*, 983 F.2d 587, 594 (4th Cir. 1993).[8] Here, the Town also adequately documented its aesthetic concerns. Its legislative findings, manifested in the Land Use Plan, the LDO preamble, the Sign Ordinance, policy statements, and testimony of Town officials, were that unregulated signage would depress property values, cause visual blight, deter commercial and residential growth, harm environmental resources, and diminish the wholesome character of the Town. *See* J.A. 632-33, 758, 1024, 1300-04, 1312-17. We also reject Bowden's contention that "in this case, there was *no* evidence of any specific traffic problems." Appellee's Br. at 24. To the contrary, the record shows that the bright fluorescent lettering sprayed across Bowden's home distracted both a Cary police officer and a passing motorist, who "beeped his horn" to get the officer's attention. J.A. 1276.

Next, we ask whether the Sign Ordinance is narrowly tailored to further the Town's substantial interests. Specifically, we must be satisfied that the Sign Ordinance does not "burden

---

[8]*In Arlington County Repub. Comm.*, we invalidated a sign ordinance that imposed a "two-sign limit," similar to the Town's Sign Ordinance, on all political signs. We did so on the ground that the county in that case failed to show that the restriction was narrowly tailored to serve Arlington County's legislative interests of traffic safety and aesthetics. 983 F.2d at 595. Because Bowden does not challenge the Sign Ordinance's quantitative limits on signs, we express no view on that question.

substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799. We think the Sign Ordinance passes constitutional muster on this score, as its size, color and positioning restrictions "do no more than eliminate the exact source of the evil it sought to remedy[.]" *Wag More Dogs*, 680 F.3d. at 369 (internal quotations omitted). Finally, unlike the flat ban of residential signs invalidated by *Ladue*, 512 U.S. at 56, the Sign Ordinance "leave[s] open ample alternative channels of communication" by generally permitting residential signs subject to reasonable restrictions. *Id.* (internal quotations omitted); *see also* J.A. 1924 (depicting permissible signage displaying Bowden's message). Within such limits, a sign can contain any message the speaker wishes to convey.

Accordingly, we conclude that the Sign Ordinance survives intermediate scrutiny.

### IV.

Bowden also contends that the Sign Ordinance exemptions are unconstitutionally vague. We do not agree.

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732.

In this case, the Town has supplied definitions of public art and holiday decorations, *see* J.A. 869, 883, and if they lack the clarity Bowden would insist on, it is because the concepts do not lend themselves to easy definition. Because laws are "condemned to the use of words, we can never expect mathematical certainty from our language." *Hill*, 530 U.S. at 732 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)). Nevertheless, the vagueness doctrine does not pre-

vent governments from regulating vague concepts—it only requires that they provide some guidance for citizens to understand the reach of a law's application. *See Farrell v. Burke*, 449 F.3d 470, 486-87 (2d Cir. 2006).

The Town has done its best to do just that through definitions "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973). It defies common sense to argue—as Bowden does—that it is unclear under the Sign Ordinance whether the sign "Screwed by the Town of Cary" qualifies as "public art" or "holiday decorations." Bowden cannot reasonably contend that his sign was "intended to beautify" or was an "observance" of a holiday.

It is true that the exemptions at issue—public art and holiday decorations—involve subjective determinations, and that the Sign Ordinance must contain "adequate standards to guide [an] official's decision and render it subject to effective judicial review." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323 (2002). But the fact that "esthetic judgments are necessarily subjective, defying objective evaluation," only means that they "must be carefully scrutinized to determine if they are only a public rationalization of an impermissible purpose." *Metromedia*, 453 U.S. at 510. As we have already dispelled such a purpose, we reject this argument.

V.

"Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation." *Ladue*, 512 U.S. at 48. The content neutrality doctrine of the First Amendment does not impose an all-or-nothing ultimatum upon municipalities that confront these problems. What it requires is that any content distinction a government makes must have a reasonable relation to a content neutral purpose.

What it forbids are content distinctions that jeopardize our most venerated First Amendment principles by regulating public opinion under the guise of public welfare.

We acknowledge that the Town's Sign Ordinance, and in particular its application to Bowden, has aggravated some Cary residents who believe it excessively restrictive. *See* J.A. 1026-68, 1107-10. But their recourse here lies with the ballot, not the Constitution. Because the Sign Ordinance has distinguished content for a constitutionally permissible purpose, we hold that it does not violate the First Amendment. Accordingly, we reverse the judgment of the district court and the accompanying order awarding Bowden attorney fees and costs, and remand with instructions to enter summary judgment for the Town.

*REVERSED AND REMANDED*

**APPENDIX**

