Charles **KELLY**, Plaintiff,

v.

**CITY OF PARKERSBURG,**
**et al., Defendants.**

Civil Action No. 6:13–cv–23260.

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Oct. 16, 2013.

---

Sarah Austin Rogers, American Civil Liberties Union of West Virginia Foundation, Charleston, WV, Walt Auvil, Rusen & Auvil, Parkersburg, WV, for Plaintiff.

Johnnie E. Brown, S. Andrew Stonestreet, Pullin Fowler Flanagan Brown and Poe, Charleston, WV, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

JOSEPH R. GOODWIN, District Judge.

Pending before the court is the plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction [Docket 5]. On October 2, 2013, I entered a Temporary Restraining Order [Docket 13] prohibiting the defendants from enforcing Parkersburg Codified Ordinance 347.28. I held a hearing on October 9, 2013, to determine whether to enter a preliminary injunction. For the reasons described below, the plaintiff's motion is **GRANTED**. The defendants are **ENJOINED** from enforcing Parkersburg Codified Ordinance 347.28 pending a trial on the merits.

### I. Background

The plaintiff, Charles Kelly, argues that Parkersburg's Ordinance 347.28 unconstitutionally restricts his First Amendment right to solicit charitable donations at city intersections. Mr. Kelly is a disabled Vietnam veteran who seeks to solicit charitable donations to supplement his fixed income. (Verified Compl. [Docket 1] ¶¶ 13, 17, 18). In September 2012, he solicited donations on the sidewalk at the intersection of 6th Street and Ann Street in downtown Parkersburg, West Virginia. (*Id.* ¶ 20). Mr. Kelly held a sign that read, "Disabled Veteran, Please Help, God Bless." (*Id.*). Mr. Kelly remained on the sidewalk for approximately three hours until a Parkersburg police officer cited him for violation of Ordinance 761.03, requiring him to pay a fine of $137.00. (*Id.* ¶ 22).

Ordinance 761.03 was repealed by the Parkersburg City Council on December 11, 2012. (*Id.* ¶ 31). The resolution repealing Article 761 specified that a different provi-

sion, Ordinance 347.28, had earlier been enacted "in the place of" Article 761. (*Id.* ¶ 31). The Parkersburg City Attorney subsequently directed police officers to "issue all future citations for solicitation under 347.28 of the City Code." (Verified Compl., Ex. B, Attach. 7 [Docket 10–7], at 2). Ordinance 347.28 provides as follows:

**347.28 RESTRICTION ON THE SOLICITATION OF MONEY**

It shall be unlawful for any person, firm, corporation, organization or association to solicit money or contributions for any purpose in an intersection, or in that portion of the public right of way that is within twenty feet of an intersection, on or upon the following streets: [the ordinance lists fourteen streets].

Mr. Kelly "wishes to engage in peaceful solicitation of funds in the future" in the locations listed under Ordinance 347.28 without fear of citation, arrest, or prosecution. (*Id.* ¶ 37). He alleges that he has refrained from soliciting donations in the areas covered by Ordinance 347.28 because he fears citation, arrest, and prosecution. (*Id.* ¶ 44). In his Verified Complaint, Mr. Kelly brings four claims in relation to the Ordinance: (1) a facial challenge under the First Amendment right to freedom of speech, (2) an as-applied challenge under the First Amendment right to freedom of speech, (3) an as-applied challenge under the Fourteenth Amendment Equal Protection Clause, and (4) an as-applied challenge under the Fourteenth Amendment Due Process Clause. (*Id.* ¶¶ 76–93). He brings this motion to enjoin the city of Parkersburg and the Parkersburg Chief of Police from enforcing Ordinance 347.28 until a trial can be held on the merits of his claims.

## II. Discussion

### A. Preliminary Injunction Standard

■ The United States Supreme Court and the United States Court of Appeals for the Fourth Circuit have provided district courts with a precise analytical framework for determining whether to grant a preliminary injunction. *See Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); *The Real Truth About Obama, Inc. v. FEC,* 575 F.3d 342, 345–47 (4th Cir.2009), *vacated on other grounds,* 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010). First, plaintiffs must make a clear showing that they will likely succeed on the merits. *The Real Truth About Obama, Inc.,* 575 F.3d at 346. Second, plaintiffs must make a clear showing that they are likely to be irreparably harmed absent preliminary relief. *Id.* Third, plaintiffs must show that the balance of equities tips in their favor. *Id.* Finally, the plaintiffs must show that an injunction is in the public interest. *Id.* All four requirements must be satisfied for a preliminary injunction to be appropriate. *Id.*

Although the parties focus most of their arguments on whether the plaintiff is likely to succeed on the merits, the defendants contest each of the four requirements for obtaining a preliminary injunction.

### B. Probability of Success on the Merits

■ Charitable solicitation by individuals is protected by the First Amendment. *See Vill. of Schaumburg v. Citizens for a Better Env't,* 444 U.S. 620, 632, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 553 (4th Cir.2013) ("the speech and expressive conduct that comprise begging merit First Amendment protection"). The primary dispute between the parties is whether Ordinance 347.28 is a content-based or content-neutral restriction. Content-based restrictions are subject to strict scrutiny. *See Perry Educ. Ass'n v. Perry Local Ed-*

*ucators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *Clatterbuck,* 708 F.3d at 555. Content-based restrictions will pass constitutional muster only if they are "necessary to serve a compelling state interest," *Perry,* 460 U.S. at 45, 103 S.Ct. 948, and they are the least restrictive means of achieving that compelling state interest, *see Sable Commc'ns of Cal., Inc. v. FCC,* 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). On the other hand, mere "regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication" are permitted. *Perry,* 460 U.S. at 45, 103 S.Ct. 948.

■ In evaluating whether a regulation is a content-based restriction, the Fourth Circuit has adopted a pragmatic, rather than formalistic, test. *See Clatterbuck,* 708 F.3d at 556; *Brown v. Town of Cary,* 706 F.3d 294, 302–04 (4th Cir.2013). Under this test, a district court should first determine whether a regulation facially distinguishes based on content. *Cf. Clatterbuck,* 708 F.3d at 556 (holding regulation facially distinguished based on content, but remanding to district court to determine whether regulation also distinguished with a censorial intent). If the court determines that the regulation facially distinguishes based on content, it must then determine whether the regulation distinguishes *"because* of content." *Brown,* 706 F.3d at 304. "[A] distinction is only content-based if it distinguishes content with a censorial intent to value some forms of speech over others...." *Clatterbuck,* 708 F.3d at 556 (internal quotation omitted). One way to determine whether a regulation distinguishes content with a censorial intent is to examine whether it is "justified without reference to the content of regulated speech." *Brown,* 706 F.3d at

303 (quoting *Hill v. Colorado,* 530 U.S. 703, 720, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)). If a regulation is "justified without reference to the content of regulated speech ... even if it facially differentiates between types of speech," it will not be treated as a content-based restriction. *Brown,* 706 F.3d at 303 (quoting *Hill v. Colorado,* 530 U.S. 703, 720, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) and *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 366 (4th Cir.2012)). In other words, the district court should examine whether the government has asserted a content-neutral purpose for the regulation. *See Clatterbuck,* 708 F.3d at 556.

■ However, "the mere assertion of a content-neutral purpose" is not enough. *Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622, 642–43, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). A regulation that makes content distinctions will be treated as content neutral only if the government can demonstrate a "reasonable fit" between a legitimate content-neutral government interest and the content distinction at issue. *Brown,* 706 F.3d at 303. This approach is illustrated by *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality), where the United States Supreme Court invalidated an ordinance that generally prohibited outdoor signs, but allowed onsite commercial advertising. *See id.* at 493–494, 521, 101 S.Ct. 2882. San Diego's stated purpose for the regulation was aesthetics and traffic safety. *Id.* at 493, 101 S.Ct. 2882. In determining that San Diego had discriminated based on content, the Court stated that the city failed to "explain how or why noncommercial billboards located in places where commercial billboards are permitted would be more threatening to safe driving or would detract more from the beauty of the city." *Id.* at 513, 101 S.Ct. 2882. Interpreting *Metromedia,* the Fourth Circuit

stated that "it was the relationship—or lack thereof—between the content distinction and the legislative end of traffic safety that convinced the ... Court that [San Diego] had discriminated for reasons of content." *Brown,* 706 F.3d at 303. Accordingly, pursuant to the Fourth Circuit's practical inquiry, I will first determine whether Ordinance 347.28 makes content distinctions on its face. If I find that it does, I will then determine whether that content distinction is based on a censorial intent.

The defendants argue that the Ordinance does not discriminate based on content because it "prohibits solicitations *for any purpose.*" (Defs.' Mem. of Law in Supp. of Its Mot. in Opp'n to Pl.'s Mot. for Prelim. Inj. ("Defs.' Mem.") [Docket 18], at 8). "On its face, the ordinance makes no distinction of the content of any solicitation—all solicitations, for whatever purpose, are limited by the ordinance." *(Id.).* This is a misreading of the Ordinance. The Ordinance facially distinguishes between types of solicitation. It makes it unlawful for any person or group to "solicit money or contributions for any purpose in an intersection...." Thus, the Ordinance applies only to solicitations for *money or contributions for any purpose.* On its face, the Ordinance does not prohibit other types of solicitations, including solicitations for votes, solicitations to enter free raffles, or solicitations to register for a church mailing list.

This case is similar to *Clatterbuck v. City of Charlottesville,* 708 F.3d 549 (4th Cir.2013), where the Fourth Circuit held that a restriction on solicitation was content based. There, the plaintiffs challenged a local ordinance that prohibited individuals from soliciting donations within fifty feet of two particular streets. *Id.* at 551–52. The statute at issue provided that "[i]t shall be unlawful for any person to

solicit money or other things of value, or to solicit the sale of goods or services[.]" *Id.* at 552. The statute defined "solicit" as "to request an immediate donation of money or other thing of value...." *Id.* Reversing the district court, the Fourth Circuit held that the restriction was content based on its face because it distinguished between types of solicitation:

> The Ordinance plainly distinguishes between types of solicitations on its face. Whether the Ordinance is violated turns solely on the nature or content of the solicitor's speech: it prohibits solicitations that request immediate donations of things of value, while allowing other types of solicitations, such as those that request future donations, or those that request things which may have no "value"—a signature or a kind word, perhaps.

*Id.* at 556. Parkersburg's Ordinance similarly distinguishes between types of solicitations on its face. Whether the Ordinance is violated depends on the nature or content of the solicitor's speech. A solicitor holding a sign that says "Please donate" violates the Ordinance while a solicitor holding a sign that says "Vote for the Mayor" does not.

The defendants argue that the instant case is distinguishable from *Clatterbuck* because Ordinance 347.28 restricts more than solicitation of money. *(See* Defs.' Mem. [Docket 18], at 9 ("The ordinance restricts both solicitation of money and solicitation of contributions, as is indicated by the 'money *or* contributions' language.")). I agree that Parkersburg's Ordinance is broader than the ordinance considered in *Clatterbuck.* But that fact alone does not render the Ordinance content neutral. The Ordinance still prohibits certain solicitations based on the nature or content of the solicitor's speech. Accordingly, I **FIND** that Parkersburg Codified

Ordinance 347.28 is a content-based restriction on its face.

I now turn to the second part of the Fourth Circuit's inquiry—censorial intent. The defendants argue that Ordinance 347.28 is content neutral because it is justified without reference to the content of the speech it regulates. (*See* Defs.' Mem. [Docket 18], at 10–11). The defendants explain that the Ordinance is justified as a traffic safety measure. "By prohibiting solicitation in the intersections and within twenty feet of the busiest intersections, the ordinance is clearly trying to protect citizens from a traffic related accident." (*Id.* at 10). However, this does not explain why only particular types of solicitation are prohibited near intersections. A solicitor of votes presumably presents the same traffic safety concerns as a solicitor of money or contributions. Yet only solicitors requesting money or contributions are regulated by the Ordinance. Parkersburg "cannot disguise a content based restriction beneath a content neutral justification, but rather must demonstrate a reasonable fit between its legitimate interest[ ]" in traffic safety and its regulation of only particular types of solicitation. *Brown v. Town of Cary,* 706 F.3d 294, 303 (4th Cir.2013) (internal quotation omitted); *see Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ("Government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech.") (internal quotation omitted). The interest advanced by the defendants—traffic safety—does not reasonably fit with the content distinctions made by the Ordinance.

The defendants point to *Brown* to support their position. There, the court upheld an ordinance that permitted residents to "display up to two residential signs that 'shall not exceed five square feet per side in area and 42 inches in height.'" 706 F.3d at 298. Holiday displays and public art were not subject to regulation under the ordinance. *See id.* The plaintiff was cited for painting a sign that was too large after he scrawled " 'Screwed by the Town of Cary' across a fifteen foot swath of the facade of his home." *Id.* Upholding the ordinance, the Fourth Circuit found Cary's justification—"aesthetics and traffic safety"—to be content neutral. *See id.* at 297. The court explained that "we think it reasonable to presume that public art and holiday decorations enhance rather than harm aesthetic appeal, and that seasonal holiday displays have a temporary, and therefore less significant, impact on traffic safety." *Id.* at 304.

I find it hard to reconcile the facts in *Brown* with the court's holding. As the *Brown* court admits, "a nativity scene or an elaborate work of art may implicate traffic safety no less than an ordinary residential sign." *Id.* That is precisely why I am unable to see how exceptions for public art and holiday displays reasonably fit Cary's interests in traffic safety and aesthetics.

In any event, Parkersburg's Ordinance 347.28 is not the same as that in *Brown.* The ordinance at issue in *Brown* placed "reasonable time, place, and manner restrictions *only on the physical characteristics of messages* ...." *Id.* (emphasis added). The plaintiff could therefore express his message, as long as it conformed with Cary's size and color requirements. *See id.* at 298–99. Parkersburg's Ordinance, on the other hand, completely prohibits particular expression from certain areas, regardless of the manner in which it is presented.

I **FIND** that Ordinance 347.28 distinguishes content with a censorial intent because there is no reasonable fit between Parkersburg's interest in traffic safety and

a regulation of only particular types of solicitation. I accordingly **FIND** that Ordinance 347.28 is a content-based restriction subject to strict scrutiny.

Because I find that Ordinance 347.28 is a content-based restriction, the plaintiff will succeed on his claim unless the Ordinance is the least restrictive means of achieving a compelling governmental interest. *See Sable Commc'ns of Cal., Inc. v. FCC,* 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989) ("The Government may ... regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest."). The defendants have not argued that the Ordinance is the least restrictive means of promoting safety near intersections. In fact, the defendants appear to admit the opposite: "It is irrelevant that the ordinance may not be the 'least restrictive' means of accomplishing the substantial government interest, as the City does not have to meet the 'least restrictive' standard." (Defs.' Mem. [Docket 18], at 13). Therefore, I **FIND** that the plaintiff is likely to succeed on the merits of his First Amendment facial challenge. Because Mr. Kelly is likely to succeed on his First Amendment facial challenge, I do not consider his other claims here.

## C. Irreparable Harm

■■■ In the context of a preliminary injunction, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The threat of prosecution for soliciting donations can constitute irreparable injury. *See, e.g., Jefferson v. Rose,* 869 F.Supp.2d 312, 318 (E.D.N.Y.2012) ("Even threats of arrest or being told to 'move along' by the police violate Plaintiff's rights and constitute actual injury."). The plaintiff alleges that he "has often refrained from panhandling, or refrained from panhandling in promising locations, to avoid prosecution." (Verified Compl. [Docket 1] ¶ 44). This is despite the fact that he fears he cannot continue to pay his living and medical expenses without soliciting donations. (*See* Kelly Dec. [Docket 1–1] ¶¶ 12, 14). I **FIND** that the infringement of the plaintiff's First Amendment freedoms and the plaintiff's need to solicit donations to cover basic living expenses constitute irreparable harm if a preliminary injunction is not issued.

## D. Balance of Equities

■■■ The defendants argue that the balance of equities tips in their favor. Without enforcement of Ordinance 347.28, they argue that "the public, solicitors, motorists, and pedestrians" are exposed to "higher risk and threat of injury at the busiest intersections in the city." (Defs.' Mem. [Docket 18], at 16). Although I take safety concerns seriously, Parkersburg has other statutes at its disposal to ensure public safety at intersections. *See* W. Va. Code § 17C–13–3 (prohibiting standing or parking in an intersection except when in compliance with the law); W. Va.Code § 61–2–9a (prohibiting "harassment"). Therefore, in light of the plaintiff's need to solicit donations to cover living expenses and medical bills, I **FIND** that the balance of equities tips in favor of issuing a preliminary injunction.

## E. Public Interest

■■■ Although the defendants admit that preservation of First Amendment freedoms is a significant public interest, they argue that the public will be harmed by prohibiting enforcement of an "important public safety mechanism." (Defs.' Mem. [Docket 18], at 16–17). However, as I previously explained, the defendants can

ensure safety near intersections by enforcing other statutes. Further, the public interest generally favors protecting First Amendment rights. *See, e.g., Carey v. FEC,* 791 F.Supp.2d 121, 135–36 (D.D.C. 2011) (holding that the plaintiffs' right to political speech is "fully in accord with the public's interest in free speech and association."); *Mullin v. Sussex Cnty., Del.,* 861 F.Supp.2d 411, 428 (D.Del.2012) ("[T]he public interest favors an environment in which there is not any governmental favoritism of a specific religion in violation of the Establishment Clause."). Accordingly, I **FIND** that granting a preliminary injunction in this case is in the public's interest.

### III.   Conclusion

For the reasons described above, the plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction [Docket 5] is **GRANTED.** The defendants are **ENJOINED** from enforcing Parkersburg Codified Ordinance 347.28 pending a trial on the merits.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.