GREGORY, Circuit Judge,
dissenting:
Central Radio challenges the City of Norfolk’s restrictions on its sign protesting the seizure of its land by eminent domain — a protest that the Virginia Supreme Court ultimately vindicated. See PKO Ventures, LLC v. Norfolk Redev. & Hous. Auth., 286 Va. 174, 747 S.E.2d 826, 833 (2013). I write separately to dissent from Part II.A.1 of the majority opinion, as I do not believe our precedent compels application of a content-neutral inquiry.
I would apply a content-based test to the City’s Sign Code. As the majority opinion recognizes, this Court’s so-called practical inquiry is meant to determine if the government’s regulation is “justified without reference to the content of regulated speech.” Brown v. Town of Cary, 706 F.3d 294, 303 (4th Cir.2013) (quoting Hill v. Colorado, 530 U.S. 703, 720, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)). As we stated in Brown, the lack of any relationship between a law’s content distinction and its legislative end is probative of whether the government has discriminated on the basis of content. See 706 F.3d at 303 (citing Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 513-14, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality)). In a case like this, involving political speech against the heaviest hand of government attempting to seize its citizen’s land, we must ensure a “reasonable fit” between the City’s asserted interests in aesthetics and traffic safety, and the Code’s exemptions for government and religious emblems and flags. Id.
I disagree that the City has demonstrated this “reasonable fit.” Why is it that the symbols and text of a government flag do not affect aesthetics or traffic safety and escape regulation, whereas a picture of a flag does negatively affect these interests and must be subjected to size and location restrictions? I see no reason in such a distinction. This is a much different case from the exemptions we confronted in Brown for temporary holiday decorations and public art. See 706 F.3d at 304-05. There, we thought it “reasonable to presume” that decorations and art enhance aesthetic appeal, and that the seasonal nature of holiday displays had a “temporary, and therefore less significant, impact on traffic safety.” Id. at 304. Unlike in our case, the exemptions in Brown could be justified on the basis of aesthetics and safety concerns. I find no such justification here, where the City’s regulatory scheme perpetually disadvantages dissidents like Central Radio. The danger is not that the City has “indicated any preference for a particular governmental or religious speaker or message,” Maj. Op. at 237, but that it declines to regulate entirely and therefore favors all official government and religious speakers and speech. For this reason, the exemptions should be *242 forced to withstand heightened scrutiny under a content-based test.
Furthermore, the City has not adequately demonstrated that its adoption of the Code and its exemptions was unrelated to disagreement with a particular message. See Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 368 (4th Cir.2012) (“[Disagreement with the message [speech] conveys ... is the principal inquiry in determining content neutrality.”) (internal quotation marks and citation omitted). Although the City maintains this is the case, it refer: enees only the Purpose Statement within the Code as support. In Brown, we warned that “the mere assertion of a content-neutral purpose” is not “enough to save a law which, on its face, discriminates based on content.” 706 F.3d at 304 (quoting Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 642-43, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)); see also id. (“[W]hen a government supplies a content-neutral justification for the regulation, that justification is not given controlling weight without further inquiry.”) (quoting Whitton v. City of Gladstone, 54 F.3d 1400, 1406 (8th Cir.1995)). Even if a party need not “com[e] forward with voluminous evidence justifying a regulation,” Wag More Dogs, 680 F.3d at 365 n. 3, surely it must do something more than simply point to a content-neutral justification written into the law’s preface. At least in Brown, the city “adequately documented” that its legislative interests were unrelated to the ordinance’s content distinctions through legislative findings, policy statements, and testimony of Town officials. Brown, 706 F.3d at 305. I find no such showing in this record.*
This case implicates some of the most important values at the heart of our democracy: political speech challenging the government’s seizure of private property— exactly the kind of taking that our Fifth Amendment protects against. If a citizen cannot speak out against the king taking her land, I fear we abandon a core protection of our Constitution’s First Amendment. Here, Central Radio spoke out against the king and won. It may be that the Code passes the heightened scrutiny of a content-based inquiry. But to stop short without subjecting the regulation to a more rigorous examination does a disservice to our cherished constitutional right to freedom of speech. I respectfully dissent.
APPENDIX
*243 [[Image here]]

 In fact, one of the drafters of the Code revealed in his deposition: "Why do we create exemptions for government flags, is that what you’re asking? Because I believe we believe that’s the right thing to do ... I think we consider the importance of an American flag or a state flag to far exceed that of an enthusiastic sports flag.” J.A. 1012-13.