EASTERBROOK, Circuit Judge.
The City of Springfield has an ordinance (§ 131.06 of the Municipal Code) that prohibits panhandling in its “downtown historic district” — less than 2% of the City’s area but containing its principal shopping, entertainment, and governmental areas, including the Statehouse and many state-government buildings. The ordinance defines panhandling as an oral request for an immediate donation of money. Signs requesting money are allowed; so are oral pleas to send money later. Springfield evidently views signs and requests for deferred donations as less impositional than oral requests for money immediately, which some persons (especially at night or when no one else is nearby) may find threatening. Plaintiffs have received citations for violating this ordinance and allege that they will continue panhandling but fear liability; this gives them standing to contest the ordinance’s constitutional validity. See Susan B. Anthony List v. Driehaus, — U.S.—, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014).
Plaintiffs asked the district court to issue a preliminary injunction, contending that the ordinance violates the Constitution’s First Amendment, applied to the states by the Fourteenth. The parties simplified the judicial task by agreeing that panhandling is a form of speech, to which the First Amendment applies, and that if it draws lines on the basis of speech’s content then it is unconstitutional. Defendants further simplified the litigation by not relying on the principle of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and not contending that the outcome of the citation proceedings blocks this suit through issue preclusion (collateral estoppel) or claim preclusion (res judicata).
We need not decide whether the parties are right about these matters, for none of them affects subject-matter jurisdiction— though some aspects of the parties’ agreement reflect the holdings, or assumptions, of Gresham v. Peterson, 225 F.3d 899 (7th Cir.2000), which held that an anti-panhandling ordinance in Indianapolis, Indiana, is constitutional but did not reach (because the parties did not present) the question whether that ordinance is content-based. The district court denied plaintiffs’ motion for a preliminary injunction, ruling that the ordinance as written and enforced generally (that is, “on its face” rather than “as applied” to these plaintiffs) is content-neutral. 2013 U.S. Dist. Lexis 153330 (C.D.Ill. Oct. 25, 2013).
Other courts of appeals have divided on the question whether rules similar to Springfield’s are content-based. Three circuits have answered “yes” and held them invalid. ACLU v. Las Vegas, 466 F.3d 784 (9th Cir.2006); Clatterbuck v. Charlottesville, 708 F.3d 549 (4th Cir. 2013); Speet v. Schuette, 726 F.3d 867 (6th Cir.2013). But two circuits have concluded that anti-panhandling laws are content- *715 neutral and valid. ISKCON of Potomac, Inc. v. Kennedy, 61 F.3d 949, 954-55 (D.C.Cir.1995); Thayer v. Worcester, 755 F.3d 60 (1st Cir.2014) (Souter, J.).
Each of these ordinances or regulations is a little different from the others, and from Springfield’s — the ordinance in Worcester, for example, addresses “aggressive” panhandling,* and Michigan’s statute (the subject of Speet) forbids all “begging” — but they all prohibit a request for money or valuables to be handed over immediately. And the distinctions between “money now” and “money later,” and between “money paid to me” and “money paid to someone else,” are what plaintiffs say make the ordinances invalid; their lawyer stated at oral argument that, if the ordinances barred all requests for money, they would not have a good claim under the First Amendment. In other words, plaintiffs contend that the City’s effort to curtail the ordinance’s scope, by permitting requests that do not seem threatening, is what makes it unconstitutional. The rule that regulation of speech must be narrowly tailored, see, e.g., McCullen v. Coakley, — U.S. —, 134 S.Ct. 2518, 189 L.Ed.2d 502 (2014), thus becomes an engine of destruction, because every effort to narrow a rule will distinguish some speech from other speech and so, in plaintiffs’ view, doom it.
The Supreme Court has dealt with three anti-panhandling laws or regulations. Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), holds that a state fair may prohibit panhandling and other fundraising by anyone walking its grounds, limiting solicitation to rented booths. United States v. Kokinda, 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990), holds that the Postal Service may forbid all fundraising on a sidewalk leading to a post office. International Society for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 112 S..Ct. 2701, 120 L.Ed.2d 541 (1992), holds that an airport authority may prohibit all solicitation and receipt of funds within the terminal. Plaintiffs maintain that these decisions are irrelevant, because each rests in part on a conclusion that the venue was not a traditional public forum.
True enough, in the Supreme Court’s three decisions the government had the benefit of its proprietary interest in the forum, while public streets traditionally are open to speech. But in each case the Court observed that regulation still must be reasonable. See also Cornelius v. NAACP Legal Defense and Educational Fund, Inc., 473 U.S. 788, 807-13, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). In each case, the Court concluded that the regulation was reasonable. For example, in Lee the Court observed: “face-to-face solicitation presents risks of duress that are an appropriate target of regulation. The skillful, and unprincipled, solicitor can target the most vulnerable, including those accompanying children or those suffering physical impairment and who cannot easily avoid the solicitation.” 505 U.S. at 684, 112 S.Ct. 2701.
*716 In both Kokinda and Lee, Justice Kennedy wrote separately to express the view that the regulation was an appropriate time, place, and manner limitation, independent of the venue’s “forum” status. Kokinda, 497 U.S. at 737-39, 110 S.Ct. 3115; Lee, 505 U.S. at 703-09, 112 S.Ct. 2701. Justice Kennedy supplied the fifth vote necessary to the disposition in Kokinda. And although Justice Kennedy’s vote was not essential to the disposition in Lee, Justice Souter, writing for the First Circuit in Thayer, concluded that Justice Kennedy’s analysis illustrates the Court’s likely disposition of a panhandling regulation in a traditional public forum. Justice Souter dissented in Lee; he disagreed with Justice Kennedy on the merits (in Lee) but still concluded (in Thayer) that Justice Kennedy’s view is likely to carry the day.
Justice Kennedy concluded in Lee that an airport should be treated the same as a city street and that restricting panhandling is permissible in both settings. What made the regulation permissible, he concluded, was that it had been narrowly tailored so that it dealt only with potentially threatening (or advantage-taking) confrontations. He explained (505 U.S. at 707, 112 S.Ct. 2701, citation omitted): “we have held that to be narrowly tailored a regulation need not be the least restrictive or least intrusive means of achieving an end. The regulation must be reasonable, and must not burden substantially more speech than necessary. Under this standard the solicitation ban survives with ease, because it prohibits only solicitation of money for immediate receipt.” In other words, what saved the regulation in Justice Kennedy’s eyes is exactly what condemns it in plaintiffs’: the limit to solicitation for immediate receipt, which Justice Kennedy saw as the soul of reasonableness and plaintiffs as pernicious content discrimination.
When the Supreme Court writes that rules regulating speech by content require the same sort of powerful justification as rules regulating speech by viewpoint, a standard met in practice only by a need as serious as the battle against terrorists, see Holder v. Humanitarian Law Project, 561 U.S. 1, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010), it does not mean that all classification of speech is (effectively) forbidden. Government regularly distinguishes speech by subject-matter, and the Court does not express special concern.
“[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.” Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834 (1949). Numerous examples could be cited of communications that are regulated without offending the First Amendment, such as the exchange of information about securities, SEC v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir.1968), corporate proxy statements, Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the exchange of price and production information among competitors, American Column & Lumber Co. v. United States, 257 U.S. 377, 42 S.Ct. 114, 66 L.Ed. 284 (1921), and employers’ threats of retaliation for the labor activities of employees, NLRB v. Gissel Packing Co., 395 U.S. 575, 618, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969).... Each of these examples illustrates that the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity. Neither [Virginia Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976)] nor *717 [Bates v. State Bar of Arizona, 483 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977)] purported to cast doubt on the permissibility of these kinds of commercial regulation.
Ohralik v. Ohio State Bar Association, 436 U.S. 447, 456, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). This means that the “content-based” restrictions that require special justification are a subset of those that depend on the subject-matter of the speech.
The Court has classified two kinds of regulations as content-based. One is regulation that restricts speech because of the ideas it conveys. See, e.g., Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622, 643, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). The other is regulation that restricts speech because the government disapproves of its message. See, e.g., Brown v. Entertainment Merchants Association, — U.S.—, 131 S.Ct. 2729, 180 L.Ed.2d 708 (2011); United States v. Stevens, 559 U.S. 460, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010); Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); Humanitarian Law Project, 561 U.S. at 27-28, 130 S.Ct. 2705. See also Elena Kagan, Private Speech, Public Purpose: The Role of Governmental Motive in First Amendment Doctrine, 63 U. Chi. L.Rev. 413, 443-56 (1996); Geoffrey R. Stone, Content-Neutral Restrictions, 54 U. Chi. L.Rev. 46, 54-57 (1987); Geoffrey R. Stone, Content Regulation and the First Amendment, 25 Wm. & Mary L.Rev. 189, 233-51 (1983). It is hard to see an anti-panhandling ordinance as entailing either kind of discrimination. “Give me money right now” does not express an idea or message about politics, the arts, or any other topic on which the government may seek to throttle expression in order to protect itself or a favored set of speakers. Springfield’s ordinance does not regulate speech by the pitch used; it does not say, for example, that “give me money because I’m homeless” or “give me money because I support the governor” is permissible, while “give me money because my daughter is sick” or “give me money because the distribution of income is inequitable” is forbidden.
The ordinance is indifferent to the solicitor’s stated reason for seeking money, or whether the requester states any reason at all. And if the panhandler uses a sign, which is less threatening than oral demands (the requester need not approach the target), there is no restriction. Springfield has not meddled with the marketplace of ideas. Here, as in McCullen v. Coakley, 134 S.Ct. at 2530-32, what activates the prohibition is where a person says something (in the “downtown historic district”) rather than what position a person takes on a political or literary question. Petitioners are free to ask for money anywhere in Springfield outside the “downtown historic district”. The Court added in McCullen that selective exemptions from an otherwise-neutral rule do not make that rule content-based. It follows that Springfield’s exemption for signs does not make its ordinance content-based, and plaintiffs do not argue otherwise.
The disagreement within the Court in McCullen about how to distinguish a content-based from a content-neutral law (four Justices thought that law to have been content-based) — and the conflict among the circuits about panhandling ordinances — shows that it is difficult to be confident about how the line between subject-matter (usually allowed) and content-based (usually forbidden) distinctions is drawn. We do not profess certainty about our conclusion that the ordinance is content-neutral. But this was Justice Kennedy’s understanding in Lee. Evaluated by the standard for time, place, and manner restrictions Springfield’s ordinance is with *718 in the power of state and local government.
Affirmed.

 The ordinance covers "a range of potentially coercive though not conventionally aggressive behaviors, including soliciting from someone waiting in line to buy tickets or enter a building; soliciting after dark, calculated as 'the time from one-half hour before sunset to one-half hour after sunrise’; continuing to solicit from a person after the receipt of a negative response; and soliciting anyone within 20 feet of an entrance or parking area of a bank, automated teller machine, public transportation stop, pay phone, theater, or any outdoor commercial seating area like a sidewalk café." 755 F.3d at 64. A second request for money is thus only one definition of “aggressive” panhandling; in all other situations covered by Worcester's ordinance, even one request for money is forbidden.