MANION, Circuit Judge, dissenting.
Today the court holds that a panhandler who asks a passerby for money in the downtown historic district of the City of Springfield commits a crime and may face criminal prosecution for this simple request. This conclusion is alien to our First Amendment jurisprudence. Accordingly, I do not join the opinion of the court because the City of Springfield’s panhandling ordinance is a content-based regulation of speech, subject to strict scrutiny. By concluding that the ordinance is content-neutral, the court misapplies the Supreme Court’s content-based regulation jurisprudence. Consequently, I respectfully dissent.
Section 131.06(e) of the City of Springfield Municipal Code bans panhandling in the City of Springfield’s (the “City”) “downtown historic district.” The ordinance defines panhandling, in pertinent part, as “[a]ny solicitation made in person ... in which a person requests an immediate donation of money or other gratuity.” § 131.06(a)(1).[1] But the ordinance explicitly exempts from the definition of panhandling the passive display of a sign that invites donations without making a “vocal request.” § 131.06(b).
The Supreme Court has upheld solicitation bans three times, i.e., Int’l Soc. for Krishna Consciousness v. Lee, 505 U.S. 672, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992); United States v. Kokinda, 497 U.S. 720,110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (plurality); and Heffron v. Int’l Soc. for Krishna Consciousness, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). But the governmental regulation implicated in those decisions applied to all forms of solicitation. See Lee, 505 U.S. at 676, 112 S.Ct. 2701; Kokinda, 497 U.S. at 724, 110 S.Ct. 3115; Heffron, 452 U.S. at 643-44, 101 S.Ct. 2559. In our case, however, the City’s ordinance does not ban all solicitation, but, as discussed in more detail below, distinguishes among various types of solicitation.
Likewise, we upheld a solicitation ban in Gresham v. Peterson, 225 F.3d 899 (7th Cir.2000). But Gresham was presented to us in a materially different posture, where the parties agreed that the regulations were content-neutral, and so we did not decide whether the Indianapolis ordinance could be justified without reference to the content of the regulated speech. Id. at 906. So we must now answer the question that has remained unanswered after the Supreme Court’s decisions and Gresham— specifically, whether such an ordinance is content-based or content-neutral.
The court asserts a division among five Circuits regarding whether anti-panhandling ordinances like the one before us are content-based or content-neutral. It states that the Fourth, Sixth, and Ninth Circuits have struck down anti-panhandling ordinances as content-based, while the First Circuit and District of Columbia Circuits have upheld anti-panhandling ordinances as content-neutral. Faced with what it understands to be a fork in the road, the court takes the path less-traveled, and joins the First and District of Columbia Circuits. I agree with the court’s assertion that three Circuits have struck down anti-panhandling ordinances as content-based, but I disagree with the court’s conclusion that the First Circuit’s decision conflicts with them. A careful look at each of the five cases is therefore necessary.
*719 A. All three Circuits to address similar regulations of speech have concluded that they are content-based.
Three Circuit decisions have held that statutory prohibitions against immediate requests for monetary donations are content-based. In Am. Civil Liberties Union of Nev. v. City of Las Vegas, 466 F.3d 784 (9th Cir.2006) (“ACLU”), the Ninth Circuit struck down an ordinance that prohibited panhandling on a five-block stretch of public sidewalks after holding that it was a content-based restriction in violation of the First Amendment, and observed that “[a]l-though courts have held that bans on the act of solicitation are content-neutral, we have not found any case holding that a regulation that separates out words of solicitation for different treatment is content-neutral.” Id. at 794 (emphasis in original).
Likewise, in Speet v. Schuette, 726 F.3d 867 (6th Cir.2013), the Sixth Circuit struck down a Michigan statute that criminalized begging in a public place. Id. at 870. There, the court held that “Michigan’s anti-begging statute cannot withstand facial attack because it prohibits a substantial amount of solicitation, an activity that the First Amendment protects, but allows other solicitation based on content.” Id.
Finally, in a case very similar to the one before us, in Clatterbuck v. City of Charlottesville, 708 F.3d 549 (4th Cir.2013), the Fourth Circuit confronted a challenge to a city ordinance that made it “unlawful for any person to solicit money or other things of value or to solicit the sale of goods or services on the Downtown Mall within fifty (50) feet (in any direction) or 2nd Street West and 4th Street East, when those streets are open to vehicular traffic.” Id. at 552. Like our case, “ ‘solicit’ mean[t] to request an immediate donation of money or other thing of value from another person, regardless of the solicitor’s purpose or intended use of the money or other thing of value.” Id. In Clatterbuck, the district court concluded that the ordinance was content-neutral because it “d[id] not distinguish between favored and disfavored solicitation,” but rather “applie[d] to all forms of solicitations, regardless of the solicitor’s purpose or the content of the solicitor’s speech.” Id. at 556. The Fourth Circuit held that the district court’s conclusion was incorrect and reversed. Id. The court stated:
The Ordinance plainly distinguishes between types of solicitations on its face. Whether the Ordinance is violated turns solely on the nature or content of the solicitor’s speech: it prohibits solicitations that request immediate donations of things of value, while allowing other types of solicitations, such as those that request future donations, or those that request things which may have no “value” — a signature or kind word, perhaps.
Id. In fact, the rationale adopted by the district court in Clatterbuck is precisely the argument that the district court adopted in this case — that the ordinance was content-neutral because it “d[id] not distinguish between favored and disfavored solicitation,” but rather “applie[d] to all forms of solicitations, regardless of the solicitor’s purpose or the content of the solicitor’s speech.” But, the Fourth Circuit expressly rejected the argument when it held that the ordinance was content-based because it did not distinguish between favored and disfavored content of the solicitor’s speech. Id. Like Clatter-buck, here the City’s ordinance permits some verbal requests for money, but it specifically prohibits a verbal request for money for a panhandler’s personal use.
*720 B. The First Circuit’s decision is not in conflict with the Fourth, Sixth, and Ninth Circuits, but does conflict with the District of Columbia Circuit.
The First Circuit’s decision does not conflict with the three Circuits that have held that anti-panhandling ordinances are a content-based regulation of speech. In Thayer v. City of Worcester, 755 F.3d 60 (1st Cir.2014), the First Circuit addressed an ordinance that made it “unlawful for any person to beg, panhandle or solicit any other person in an aggressive manner.” Worcester Revised Ordinances, ch. 9, § 16(d). The ordinance defined “begging” or “panhandling” as “asking for money or objects of value, with the intention that the money or object be transferred at that time, and at that place.” Id. at § 16(c). Additionally, the ordinance defined “solicit[ation]” as “using the spoken, written, or printed word, bodily gestures, signs, or other means of communication with the purpose of obtaining an immediate donation of money or other thing of value the same as begging or panhandling and also include the offer to immediately exchange and/or sell any goods or services.” Id. The First Circuit concluded that the ordinance was content-neutral. Thayer, 755 F.3d at 71.
The ordinance in Thayer was designed to combat the ill effects of “aggressive” solicitation and prohibits “continuing to solicit from a person after the person has given a negative response to such solicitation,” or soliciting someone “in a manner ... likely to cause a reasonable person to fear immediate bodily harm.” Worcester Revised Ordinances, ch. 9, §§ 16(c) (emphasis added), 16(a)(3)(H).[2] Importantly, the plain text of the ordinance allows at least one verbal solicitation for money, and prohibits only aggressive follow-up after a negative response.[3] Because the ordinance in Thayer allows at least one verbal solicitation for money, what is criminal in the City of Springfield is legal in the First Circuit. Thus, Thayer does not compound the District of Columbia Circuit’s split with the three Circuit court cases I have discussed — rather it is entirely consistent with all of them.[4]
C. The District of Columbia Circuit’s decision should not be followed.
Finally, I address the District of Columbia Circuit’s decision in ISKCON of Potomac, Inc. v. Kennedy, 61 F.3d 949 (D.C.Cir.1995), the only Circuit court decision of the five discussed that does not involve a panhandler. In ISKCON, the court considered an “as-applied” challenge to a regulation that prohibited “[sjoliciting or demanding gifts, money, goods or services [in the National Capital Region parks].” Id. at 954. Although the regulation applied broadly, the court accepted the Park Service’s interpretation of “solicitation” to mean “only an in-person request for immediate payment.” Id. at 954-55. The court rejected the plaintiffs’ argument that the regulation was content-based. Id. The court held that a prohibition on “in- *721 person solicitation for immediate payment regulates the manner but not the content of expression.” Id. (citing Lee, 505 U.S. at 704-07, 112 S.Ct. 2701 (Kennedy, J., concurring)).
The reasoning of ISKCON is unsound. The first step in First Amendment public forum analysis is to examine the regulation to determine whether it discriminates on the basis of content, viewpoint, or not at all. If a court concludes the regulation is content-neutral, then it asks “whether the requirements are ‘narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels for communication of the [regulated] information.’” ISKCON, 61 F.3d at 954 (citations omitted). But ISKCON skipped the first step, and started with the second. It interpreted the regulation, as-applied, and held that it was content-neutral because the plaintiffs could make their request for donations using leaflets with donation instructions. Id. at 956. In other words, the court determined that because the regulation left open ample alternative channels for communication, it was content-neutral. Id. It then applied the remaining parts of the second half of the analysis to strike down the regulation. Id. This approach put the cart before the horse. Ultimately, the court recognized that the Service’s interest was significant, but it nevertheless struck down the regulation because it was not narrowly-tailored. Id. In short, ISKCON should not be relied upon because it assumed what was at issue — that is, that the regulation was content-neutral.
Rather than compounding the Circuit split, a look at the Supreme Court’s latest First Amendment ease reminds us that a regulation is content-based if it draws “content-based distinctions on its face.” McCullen v. Coakley, — U.S. —, 134 S.Ct. 2518, 2531, 189 L.Ed.2d 502 (2014). A regulation does so “if it require[s] ‘enforcement authorities’ to ‘examine the content of the message that is conveyed to determine whether’ a violation has occurred.” Id. (quoting F.C.C. v. League of Women Voters of California, 468 U.S. 364, 383, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984)). That is, does a violation of the regulation turn on “what [the defendants] say[?]” Id. (quoting Holder v. Humanitarian Law Project, 561 U.S. 1, 27, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010)).
To answer the question implicitly posed by these First Amendment cases, we must temporarily step into the shoes of the City’s enforcement authorities. A police officer seeking to enforce the City’s ordinance must listen to what the speaker is saying in order to determine whether the speaker has violated the ordinance. Indeed, the officer must determine on which side of at least three different verbal distinctions the speech falls when evaluating whether the ordinance has been violated. First, the officer must determine whether the speech is a request for money or other gratuity (potentially a violation) or merely a request for the listener’s time, signature, or labor (not a violation). Second, the officer must determine whether the speech is a request for an immediate transfer of money (potentially a violation) or merely a request for the transfer of money at a future date (not a violation). Third, the officer must determine whether the speech is a request for a charitable donation (potentially a violation) or merely a request for a commercial transaction (not a violation). The officer cannot answer any of these questions without listening to and understanding what the speaker is saying. That is precisely the sort of situation that the Supreme Court said involves a content-based regulation. See Snyder, 131 S.Ct. at 1219 (noting that a regulation would be content-based if speakers “standing at the very spot where [the plaintiffs] stood,” but *722 making slightly different vocal requests “would not [be] subjected to liability”); City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 429, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (holding that, because the determination of “whether any particular newsrack [fell] within the ban [was] determined by the content of the publication resting inside that newsrack[,]” the regulation was content-based); see also Holder v. Humanitarian Law Project, 561 U.S. 1, 27, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010) (holding that a law “regulates speech on the basis of content” if determining whether individuals have violated the law “depends on what they say”). That the officer must listen to and understand the speech to determine if the ordinance has been violated means that the ordinance is content-based, unlike those laws which can be imposed based merely on the volume, location, or conduct accompanying the speech.
The court says that it does not necessarily matter that the ordinance targets speakers based on what they say, so long as the ordinance does not “restrict[ ] speech because of the ideas it conveys” or because it “disapproves of its message.” Op. at 717; Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). On this logic, the court concludes that the statement “ ‘[g]ive me money right now’ does not express an idea or message about politics, the arts, or any other topic on which the government may seek to throttle expression in order to protect itself or a favored set of speakers.” Op. at 717. However, our earlier decision in Gresham disputes this conclusion. Gresham, 225 F.3d at 904 (“Beggars at times may communicate important political or social messages in their appeals for money, explaining their conditions related to veteran status, homelessness, unemployment and disability, to name a few. Like the organized charities, their messages cannot always be easily separated from their need for money”). In any event, the court concludes that if an ordinance is not viewpoint-based, then it must be content-neutral. Id. By this logic, a content-based challenge to an ordinance that is not viewpoint-based “loses by default.” Hayden ex rel. AH. v. Greensburg Cmty. Sck, 743 F.3d 569, 583-84 (7th Cir.2014) (Manion, J., concurring in part and dissenting in part). I disagree. In its attempt to determine whether the ordinance is content-based, the court examines whether the ordinance strips a viewpoint from the marketplace of ideas. That is not the test for determining whether an ordinance is a content-based regulation of speech.
Even if Ward and its progeny implicitly suggest some legal distinction between permissible restrictions on what a speaker says and the speaker’s message, the City’s ordinance is still content-based because it advantages commercial speech over charitable speech. The City’s ordinance facially prohibits someone from vocally communicating the message, “I want money,” while allowing an identically situated speaker to communicate the message “I want money, and I will give you something of value in return.” Thus, the City’s ordinance leaves commercial speech comparatively unregulated, but prohibits a type of vocal speech that has traditionally enjoyed greater constitutional protections — that is, speech soliciting charitable activity. Riley v. Nat’l Fed’n of the Blind of N.C., Inc., 487 U.S. 781, 789, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (“[T]he solicitation of charitable contributions is protected speech”). Although the court observes that commercial speech is often subjected to content-based restrictions, Op. at 716, it fails to address the content-based distinction the ordinance draws between commercial speech and charitable speech. However, the two Circuits that have previously considered simi *723 lar regulations that distinguish between commercial speech and charitable speech both concluded that they were content-based. See Speet, 726 F.3d at 875; ACLU, 466 F.3d at 794.[5]
Because the City’s ordinance is content-based, we may only uphold the ordinance if it satisfies strict-scrutiny review. United States v. Playboy Entm’t Grp., Inc., 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000); Entm’t Software Ass’n v. Blagojevich, 469 F.3d 641, 646 (7th Cir.2006). “When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions.” Playboy, 529 U.S. at 816, 120 S.Ct. 1878. But here the City offers no argument that the ordinance can satisfy that hefty burden. Cf. Horina v. Granite City, 538 F.3d 624, 633-34 (7th Cir.2008) (failure to assert a government interest necessarily fails to prove a government interest). And indeed, the City all but concedes that it cannot satisfy this demanding standard. See City Br. 3 n. 1.
The City’s ordinance prohibiting vocal requests for immediate donations of money or other gratuity at all times throughout the downtown historic district is a content-based regulation. Because the City has not alleged that the ordinance’s method of restricting speech is the least restrictive means to further a compelling government interest, the City has failed to demonstrate that the ordinance satisfies strict scrutiny. Sable Commc’ns of Cal. v. FCC, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989) (“The Government may ... regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest”).
For the foregoing reasons, I would reverse the district court’s order denying the plaintiffs’ motion for a preliminary injunction and remand with instructions to enter a preliminary injunction enjoining the enforcement of City ordinance § 131.06(a)(1). Accordingly, I respectfully dissent.

. The ordinance does not define "gratuity.”

. In our case, the plaintiffs brought no challenge to the part of the City’s ordinance prohibiting aggressive solicitation.

. "Aggressive” describes the manner of conduct-it obviously does not refer to "content.”

. Moreover, Thayer did not address whether the statute was facially content-based but skipped over that prong entirely and considered only " 'whether the government ... adopted [the] regulation of speech because of disagreement with the message it conveys,’ ” and ultimately upheld the ordinance. 755 F.3d at 67 (quoting Ward, 491 U.S. at 791, 109 S.Ct. 2746). So Thayer simply did not address the question before us in the present appeal. It also neglected to discuss the Fourth, Sixth, or Ninth Circuits’ decisions.

. The First, Fourth, and District of Columbia Circuits’ decisions involved laws that prohibited both in-person solicitations for charitable donations and in-person solicitations for commercial transactions. See Worcester Revised Ordinances, ch. 9, § 16 (defining "solicit” and "solicitation” to include both requests for immediate donations and requests for immediate commercial transactions); Clatterbuck, 708 F.3d at 552; ISKCON, 61 F.3d at 953-54 (noting that the park regulation prohibited both solicitation for charitable contributions and commercial sales).