In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3581

DON NORTON and KAREN OTTERSON,

*Plaintiffs-Appellants,*

*v.*

CITY OF SPRINGFIELD, ILLINOIS, *et al.*,

*Defendants-Appellees.*

On Petition for Rehearing

DECIDED AUGUST 7, 2015

Before EASTERBROOK, MANION, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Our first decision in this appeal concluded that Springfield's anti-panhandling ordinance does not draw lines based on the content of anyone's speech. Because the litigants agreed that the ordinance's validity depends on this issue, we affirmed the district court's decision. 768 F.3d 713 (7th Cir. 2014). We deferred consideration of the petition for rehearing until the Supreme Court decided *Reed v. Gilbert*, 135 S. Ct. 2218 (2015). Shortly after deciding *Reed*, the Court remanded *Thayer v. Worcester*, 755

F.3d 60 (1st Cir. 2014), a panhandling-ordinance decision on which our first opinion had relied, for further consideration in light of *Reed*. 135 S. Ct. 2887 (2015). At our request, the parties filed supplemental memoranda discussing *Reed*. We now grant the petition for rehearing and apply *Reed* to Springfield's ordinance.

As our first opinion explained, §131.06 of Springfield's Municipal Code

> prohibits panhandling in its "downtown historic district"—less than 2% of the City's area but containing its principal shopping, entertainment, and governmental areas, including the Statehouse and many state-government buildings. The ordinance defines panhandling as an oral request for an immediate donation of money. Signs requesting money are allowed; so are oral pleas to send money later. Springfield evidently views signs and requests for deferred donations as less impositional than oral requests for money immediately, which some persons (especially at night or when no one else is nearby) may find threatening.

768 F.3d at 714. Plaintiffs contend that the ordinance's principal rule—barring oral requests for money now but not regulating requests for money later—is a form of content discrimination.

The panel disagreed with that submission for several reasons. We observed that the ordinance does not interfere with the marketplace for ideas, that it does not practice viewpoint discrimination, and that the distinctions that plaintiffs call content discrimination appear to be efforts to make the ordinance less restrictive, which should be a mark in its favor. We summed up: "The Court has classified two kinds of regulations as content-based. One is regulation that restricts speech because of the ideas it conveys. The other is regula-

tion that restricts speech because the government disapproves of its message. It is hard to see an anti-panhandling ordinance as entailing either kind of discrimination." 768 F.3d at 717 (citations omitted). We classified the ordinance as one regulating by subject matter rather than content or viewpoint.

*Reed* understands content discrimination differently. It wrote that "regulation of speech is content based if a law applies to particular speech because of the topic discussed *or* the idea or message expressed." 135 S. Ct. at 2227 (emphasis added). Springfield's ordinance regulates "because of the topic discussed". The Town of Gilbert, Arizona, justified its sign ordinance in part by contending, as Springfield also does, that the ordinance is neutral with respect to ideas and viewpoints. The majority in *Reed* found that insufficient: "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." 135 S. Ct. at 2228. It added: "a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id*. at 2230.

Three Justices concurred only in the judgment in *Reed*. 135 S. Ct. at 2236–39 (Kagan, J., joined by Ginsburg & Breyer, JJ.). Like our original opinion in this case, these Justices thought that the absence of an effort to burden unpopular ideas implies the absence of content discrimination. But the majority held otherwise; that's why these three Justices wrote separately. The majority opinion in *Reed* effectively abolishes any distinction between content regulation and subject-matter regulation. Any law distinguishing one kind

of speech from another by reference to its meaning now requires a compelling justification.

Our observation, 768 F.3d at 717, that Springfield has attempted to write a narrowly tailored ordinance now pertains to the justification stage of the analysis rather than the classification stage. But Springfield has not contended that its ordinance is justified, if it indeed represents content discrimination. As we said at the outset, the parties have agreed that the ordinance stands or falls on the answer to the question whether it is a form of content discrimination. *Reed* requires a positive answer.

The judgment of the district court is reversed, and the case is remanded for the entry of an injunction consistent with *Reed* and this opinion.

MANION, *Circuit Judge,* concurring.

I join the opinion of the court in full, but write separately to underscore the significance of the Supreme Court's recent decision in *Reed v. Town of Gilbert,* which held that a speech regulation targeted at specific subject matter is content-based even if it does not discriminate among viewpoints within that subject matter. 135 S. Ct. 2218, 2230 (2015). *Reed* injected some much-needed clarity into First Amendment jurisprudence and, in doing so, should eliminate the confusion that followed from *Ward v. Rock Against Racism*, 491 U.S. 781 (1989). While *Ward* is well-recognized as the Court's seminal time, place, and manner First Amendment case, it also described a standard for content-neutrality that was in tension with the Court's developing content-based regulation of speech doctrine. *Reed* resolved this uncertainty.

*Ward* stated that "[t]he principal inquiry in determining content neutrality … is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." 491 U.S. at 791. Over time, courts interpreted this statement to mean that it did not matter if a law regulated speakers based on what they said, so long as the regulation of speech was not imposed because of government disagreement with the message. Under this approach, if an ordinance was not viewpoint-based, then it was content-neutral. For example, a local government's decision to eliminate religious speech or abortion-related speech was considered content-neutral because it was not viewpoint-based—as, for instance, a regulation prohibiting "Christian speech" or "pro-life speech" was and remains. *Reed* eliminates this distinction. 135 S. Ct. at 2227 (concluding that a speech regulation is content-based if it prohibits the topic discussed or the idea or message expressed);

*ante* at 3 ("*Reed* effectively abolishes any distinction between content regulation and subject-matter regulation."). On this point, *Reed* overrules *Ward*.

*Reed* saw what *Ward* missed—that topical censorship is still censorship. Rejecting the idea that the government may remove controversial speech from the marketplace of ideas by drafting a regulation to eliminate the topic, *Reed* now requires any regulation of speech implicating religion or abortion to be evaluated as content-based and subject to strict scrutiny, just like the aforementioned viewpoint-based restrictions covering more narrow contours of speech. 135 S. Ct. at 2228, 2230. Few regulations will survive this rigorous standard.

Because the court has faithfully applied *Reed* to the City's ordinance, I concur.